E-FILED
Wednesday, 12 April, 2023  10:22:18 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| **WILLIAM SILAS, JR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 22-cv-1051-JBM** |
| | ) | |
| **COURTNEY ANDERSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff, proceeding pro se and currently incarcerated at Robinson Correctional Center ("Robinson"), brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging that Defendant Anderson used excessive force against him in violation of the Fourteenth Amendment while Plaintiff was detained at the Peoria County Jail ("Jail"). The matter comes before this Court for ruling on Defendant's Motion for Summary Judgment under Federal Rule of Civil Procedure 56 and Local Rule 7.1(D). (Doc. 19). For the reasons stated below, Defendant's Motion is GRANTED. This case is now closed.

## PROCEDURAL HISTORY

Defendant filed a Motion for Summary Judgment on March 3, 2023. (Docs. 19-23, 25). The same day, the Court issued a Rule 56 Notice warning Plaintiff that if he failed to respond to Defendant's Motion within twenty-one days, the Motion would be granted, if appropriate, and the case would be terminated without a trial. (Doc. 24). The Clerk mailed a copy of the Notice to Plaintiff at the Jail on March 3, 2023. (d/e/ 3/3/2023). Plaintiff's response was due on March 24, 2023.

The same day that Defendant's Motion for Summary Judgment was filed, Plaintiff filed a letter stating that it had been 60 days since he received a response from Defendant or the Court and that he would "like to drop civil case 21-cv-1051." (Doc. 26). On March 6, 2023, the Court entered a Text Order directing Plaintiff to file a Motion to Withdraw Complaint to clearly state his intent to dismiss this case. (d/e 3/6/2023). The Clerk mailed a copy of the Text Order to Plaintiff at the Jail. (d/e 3/6/2023). On March 15, 2023, the mail was sent back to the Clerk as "Return to Sender." (Doc. 27).

On March 17, 2023, the Court entered a Text Order directing Plaintiff to file a Notice of Change of Address to provide his current address and phone number. (d/e 3/17/2023). The Clerk mailed a copy of the Text Order to Plaintiff at the Jail, which was his last known address. *Id.* On March 30, 2023, the mail was returned to the Clerk as undeliverable. (d/e 3/30/2023).

On March 29, 2023, Plaintiff filed a Notice of Change of Address stating that he was transferred to Stateville on March 10, 2023. (Doc. 28). He also stated that he wrote to the Court a week before he left the Jail asking for an update on all his civil suits, but he did not receive a response. Plaintiff again requested an update "because it was past his summary judgment date" and he had not received any response. Due to his transfer to Stateville on March 10, 2023, it appears that Plaintiff did not receive a copy of the Text Order the Court entered on March 6, 2023, directing him to file a Motion to Withdraw Complaint if he intended to dismiss this case.

On April 10, 2023, Plaintiff filed a Notice of Change of Address, stating that he was transferred to Robinson on April 5, 2023. (Doc. 30). Plaintiff requested an update on his civil suit and for returned mail to be sent to his current address.

There is no indication that Plaintiff did not receive a copy of Defendant's Motion for Summary Judgment or the Court's Rule 56 Notice, as the Notice was not returned to the Clerk as

undeliverable. To date, Plaintiff has not responded to Defendant's Motion for Summary Judgment or requested additional time to do so. Under Local Rule 7.1(D)(2), a failure to respond is deemed an admission of the motion. CDIL-LR 7.1(D)(2).

Finally, the deadline for filing his own Motion for Summary Judgment was March 3, 2023. (Doc. 14 at 8). This deadline has also passed. Plaintiff did not file a Motion for Summary Judgment, nor did he request additional time to do so. This Order now follows.

**MATERIAL FACTS**

On January 25, 2022, Plaintiff was a detainee at the Jail. Defendant Anderson was a correctional officer. (Doc. 23 at ¶ 1). At approximately 2:00 p.m. on January 25, 2022, Officer Hernandez, who is not named as a party, delivered a roll of toilet paper to Plaintiff by handing him the toilet paper through the chuck hole of his cell door. (Doc. 23 at ¶ 3-4). After handing him the toilet paper, Plaintiff placed his right arm through the chuck hole door and wrapped a sock around the chuck hole, which prevented Officer Hernandez from closing it. *Id.* at ¶ 5-6. According to an Affidavit from Jail Correctional Superintendent Carmisha Turner, the chuck hole door was required to be closed for Plaintiff's safety and the safety of the correctional staff. (Doc. 22 at ¶ 9). Defendant Anderson and Officer Hernandez gave Plaintiff verbal commands to remove his arm and sock from the chuck hole so that it could close. (Doc. 23 at ¶ 7). Plaintiff refused to remove his arm and sock from the chuck hole. *Id.* Defendant Anderson grabbed Plaintiff's hand and attempted to place it back into his cell so the chuck hole door could close. *Id.* at ¶ 8. Defendant Anderson was unable to place Plaintiff's arm back into his cell and was unable to close the chuck hole. *Id.* Throughout the incident, Plaintiff verbally threatened staff members. *Id.* at ¶ 12.

Plaintiff did not submit a medical or general grievance for medical treatment related to the incident on January 25, 2022. (Doc. 22-2). On February 5, 2022, Plaintiff refused medical attention for wound care. (Doc. 22-3).

On February 19, 2022, Plaintiff was involved in a separate incident in which he was tased for failing to obey verbal commands to stop resisting while he was searched for concealing an item in his jumpsuit. (Doc. 23 at ¶ 7). On February 21, 2022, Plaintiff's right hand was x-rayed, and no fracture, dislocation, degenerative change, or acute osseous abnormality was found. (Doc. 22-4).

Defendant Anderson was not disciplined as a result of his behavior or actions on January 25, 2022. (Doc. 23 at ¶ 10). Plaintiff was given tickets for six disciplinary violations for his conduct during the incident. (Doc. 22-1).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 7477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Id*. at 323-24. Once a properly supported motion for summary judgment is filed, the burden shifts to the non-moving party to demonstrate with specific evidence that a triable issue of fact remains for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). The party opposing summary judgment "must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must

do more than simply show that there is some metaphysical doubt as to the material facts."
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

ANALYSIS

**I.    Defendant Anderson Used Objectively Reasonable Force Against Plaintiff.**

The Due Process Clause of the Fourteenth Amendment governs a claim of excessive force by a pretrial detainee. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *see also McCann v. Ogle Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (explaining that, when evaluating whether challenged conduct is objectively unreasonable, courts must "focus on the totality of facts and circumstances").

To determine if the force used was objectively unreasonable under the circumstances, "[a] court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kinsley*, 576 U.S. at 397. The court is also required to "account for the 'legitimate interests that stem from [the Jail's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)); *see also Mays*, 974 F.3d at 820-21 (discussing the necessary deference to jail officials). Accordingly, courts give "considerable leeway" to officers regarding the "appropriate

Page **5** of **9**

use of force in dangerous situations" as a result. *Baird v. Renbarger*, 576 F.3d 340, 342 (7th Cir. 2009).

Though not an exhaustive list, *Kingsley* includes six factors to illustrate the types of objective circumstances potentially relevant to the determination of excessive force. These factors include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396).

Here, the Court finds that Defendant Anderson used objectively reasonable force against Plaintiff on January 25, 2022. Before making any physical contact with Plaintiff, Defendant Anderson and Officer Hernandez gave several verbal commands to direct Plaintiff to remove his arm from the chuck hole. After Plaintiff refused to comply, Defendant Anderson attempted to remove his hand from the chuckhole because the chuck hole was required to be closed for the safety of Plaintiff and the correctional staff. Plaintiff verbally threatened staff members throughout the incident.

Moreover, as Plaintiff's medical records show, he was not injured during the incident. Plaintiff did not submit a single grievance requesting medical attention after the incident, and on February 5, 2022, he refused medical attention for wound care. His hand was x-rayed on February 25, 2022, and there was no fracture, dislocation, degenerative change, or acute osseous abnormality. There was only some minor swelling. (Doc. 22-4).

When considering the totality of the circumstances from Defendant Anderson's perspective, the Court finds that the amount of force used was objectively reasonable and that Defendant did not violate Plaintiff's constitutional rights by using excessive force.

**II.     Defendant Anderson is Entitled to Qualified Immunity.**

Even if the Court were to find that Defendant Anderson used excessive force against Plaintiff, the doctrine of qualified immunity would shield Defendant from liability. Qualified immunity "provides defendants immunity from suit, not just a defense to liability." *Sebesta v. Davis*, 878 F.3d 226, 233 (7th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Even though qualified immunity "is an affirmative defense for pleading purposes, the plaintiff carries the burden of showing that defendants are not immune." *Id*. Qualified immunity shields a public official unless the plaintiff can demonstrate that (1) the official violated a statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Gerhartz v. Richert*, 779 F.3d 682, 688 (7th Cir. 2015) ("In order to defeat a properly raised qualified immunity defense, the plaintiff must establish two things: first, that the facts alleged describe a violation of a protected right; and second, that this right was clearly established at the time of the defendant's alleged misconduct.").

A right is "clearly established" if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017) (quoting *Gustafson v. Adkins*, 803 F.3d 883, 891 (7th Cir. 2015)). Qualified immunity cannot be defeated merely by "alleging [a] violation of extremely abstract rights" or by defining the right in question "at a high level of generality." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018). Instead, "the clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S.Ct. 500, 503 (2019). The question is whether it is clearly

established that the particular conduct of the officer violated the plaintiff's constitutional right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Stated differently, the "crucial question" is whether the official "acted reasonably in the particular circumstances that he or she faced." *Kemp*, 877 F.3d at 351. As the Court found above, Defendant Anderson's actions were reasonable under the circumstances.

To show that a right is "clearly established," the plaintiff must demonstrate that "closely analogous" caselaw or precedent finds the alleged violation unlawful. *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018). The plaintiff does not have to "point to an identical case, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (quoting *Mullenix*, 577 U.S. at 11); *see also Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016) ("The law is 'clearly established' when 'various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand.'"). In rare cases, a plaintiff can show a right is clearly established without providing caselaw or precedent by "proving that the defendant's conduct was so egregious and unreasonable that no reasonable official could have thought he was acting lawfully." *Reed*, 906 F.3d at 547.

Here, the amount of force Defendant Anderson used to attempt to remove Plaintiff's hand from the chuck hole was objectively reasonable and, therefore, Plaintiff cannot establish that Defendant violated his constitutional rights. Plaintiff also cannot show that it was clearly established on January 25, 2022, that the type of force Defendant Anderson used – physically attempting to remove Plaintiff's hand from the chuck hole opening after giving verbal commends – was unlawful under the circumstances. *See, e.g., White v. Matti*, 2002 WL 31887792, *2 (7th Cir. 2002) (finding no excessive force after prisoner put his arm through the trap door of his cell in violation of prison rules and officers allegedly beat his hand with a plastic medication box,

causing lacerations, bruises, cuts, and swelling); *Outlaw v. Newkirk*, 259 F.3d 833, 839–40 (7th

Cir. 2001) (finding no excessive force where the closing of a cuffport door in response to prisoner's

threat caused pain, swelling, and bruising of prisoner's hand).

Plaintiff cannot show that Defendant Anderson could have thought that he was acting

unlawfully. Defendant is entitled to qualified immunity. Defendant's Motion for Summary

Judgment is GRANTED.

**IT IS THEREFORE ORDERED:**

**1)     Defendant's Motion for Summary Judgment [19] is GRANTED. This action is dismissed, with prejudice. Plaintiff takes nothing. The Clerk is directed to enter judgment and close this case.**

**2)     Although Plaintiff's case has been dismissed, he remains responsible for the remainder of the $350.00 filing fee. (See d/e 3/9/2022).**

**3)     If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a)(4).**

**4)     If Plaintiff wishes to proceed *in forma pauperis* on appeal, his motion for leave to appeal *in forma pauperis* must identify the issues he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. FED. R. APP. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 12th day of April 2023.

s/ Joe Billy McDade
Joe Billy McDade
United States District Judge